UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
                                 :
UNITED STATES OF AMERICA         :
                                 :        **SEALED INDICTMENT**
    - v. -                       :
                                 :        21 Cr.
JOHN ALBERT LOAR BARKSDALE,      :
                                 :        **21 CRIM 684**
            Defendant.           :
                                 :
- - - - - - - - - - - - - - - - X

## COUNT ONE
### (Conspiracy to Commit Securities Fraud)

The Grand Jury charges:

### Overview

1.    From in or about 2017 through at least in or about
October 2021, JOHN ALBERT LOAR BARKSDALE, the defendant, and his
relative ("CC-1") perpetrated a scheme to sell a new
cryptocurrency token named Ormeus Coin (asset symbol "ORME")
through false representations.  Ormeus Coin was offered to
investors throughout the world, including in the United States
and the Southern District of New York, through enrollment
packages sold by Ormeus Global, a multi-level marketing company
controlled by BARKSDALE and CC-1, various digital currency
exchanges, and directly from BARKSDALE and his associates.

2.    Through a series of white papers, in-person roadshows,
online webinars and videos, social media platforms, and other
marketing materials approved by JOHN ALBERT LOAR BARKSDALE, the

defendant, and CC-1, BARKSDALE and CC-1 falsely represented, among other things, that Ormeus Coin was a digital money system secured by a $250 million cryptocurrency mining operation, which was one of the biggest such operations in the world.  In order to support the false representations regarding the size and value of cryptocurrency mining assets that purportedly secured the value of Ormeus Coin, BARKSDALE approved marketing materials that falsely depicted photos of a purported Ormeus Coin mining facility, deceptively referenced an "Ormeus Reserve Vault" ("ORV") that stored over 3,000 Bitcoin purportedly derived from Ormeus Coin's mining operations that was represented as securing the value of Ormeus Coin, and falsely stated that Ormeus Coin's mining revenues exceeded $5 million on a monthly basis.  In truth, Ormeus's mining operations never approached a value close to $250 million and never produced revenues exceeding one million dollars in any month, and the Bitcoin stored in the "Ormeus Reserve Vault" belonged to a third party.

3.   Numerous investors, including at least one investor in the Southern District of New York, purchased enrollment packages through Ormeus Global and purchased Ormeus Coin through digital currency exchanges or directly from JOHN ALBERT LOAR BARKSDALE, the defendant, and his associates based at least in part on BARKSDALE's false representations regarding the size, value, and

2

purported profitability of the cryptocurrency mining assets
controlled by Ormeus Global and Ormeus Coin, as well as the
purported security that the ORV provided to the value of Ormeus
Coin.  Through this scheme, from in or about June 2017 through
at least in or about April 2018, Ormeus Global raised at least
approximately $70 million from the sale of enrollment packages
to more than 8,000 investors around the world.  From in or about
June 2017 through at least in or about October 2021, Ormeus Coin
was sold to at least approximately 12,000 investors, including
at least over 200 U.S.-based investors.  At its peak, Ormeus
Coin had a market capitalization of approximately $52 million in
or about January 2018.

**Background on Ormeus Global, Ormeus Coin, and Relevant Entities**

    4.   At all times relevant to this Indictment, Ormeus
Global S.A. ("Ormeus Global") was a multi-level marketing
company formed in Panama and based in Hong Kong that was
primarily controlled by JOHN ALBERT LOAR BARKSDALE, the
defendant, who also served as the spokesperson for Ormeus
Global.  Ormeus Global was the issuer of Ormeus Coin.  Ormeus
Global also offered various bundles of goods and services
referred to as "enrollment packages" that were sold to, and
through, direct sales agents, or "members."  Members earned
commissions from 7% to 20% for recruiting other investors to

purchase enrollment packages from Ormeus Global.  The enrollment
packages varied in cost from $999 for a "Bronze" package to
$250,000 for a "Platinum Founder" package.  Each package
included, among other purported benefits, a share of the
proceeds generated by a proprietary cryptocurrency trading bot
that was represented to earn a return of up to 160%, a "short-
term mining contract" which entitled the investor to a
percentage of mining revenue until the investor recouped the
cost of the package, and a certain quantity of "free Ormeus
Coin."  Because Ormeus Global and Ormeus Coin were intertwined,
they were often referred to together simply as "Ormeus."

        5.   At all times relevant to this Indictment, Ormeus Coin
was an ERC-20 compliant smart contract-based token on the
Ethereum blockchain.[1]  Ormeus Coin was first offered for sale in
or about June 2017 on a Hong Kong-based cryptocurrency exchange
controlled by JOHN ALBERT LOAR BARKSDALE, the defendant, and
CC-1, and later on other cryptocurrency exchanges or directly
from BARKSDALE and his associates.  In marketing materials
approved by BARKSDALE, Ormeus Coin was represented to be a

_____
[1] The Ethereum blockchain is a decentralized blockchain with
smart contract functionality that can facilitate the creation of
tokens that can be bought, sold, and traded.  ERC-20 is the
technical standard for smart contracts used to create new
fungible tokens on the Ethereum blockchain.

stable, next-generation digital currency and store of value backed by real-world cryptocurrency mining assets and cryptographically linked to a publicly identifiable currency vault called the "Ormeus Reserve Vault" or "ORV." The ORV was represented to be a multi-signature wallet address where mined cryptocurrencies were deposited to secure the value of Ormeus Coin and which could be publicly verified. BARKSDALE publicly represented that the value of Ormeus Coin would increase every day based on the value of the ORV and as Ormeus's cryptocurrency mining capacity increased over time.

6.    At all times relevant to this Indictment, Ormeus Coin was represented to be primarily backed by a reserve of Bitcoin (asset symbol "BTC"), a digital currency in use since 2009 that has been the most widely used and highly valued cryptocurrency in circulation to date. Bitcoin can be transferred from one Bitcoin address to another via a transaction recorded on Bitcoin's blockchain or public ledger. Bitcoin maintains its blockchain and provides for new Bitcoin to enter the economy through a consensus mechanism known as "mining." High-powered computers called "miners" that are part of Bitcoin's network engage in complex resource-intensive verifications of recent Bitcoin transactions and aggregate them into "blocks" that are added to the blockchain and can be publicly verified. As part

5

of this process, a miner that succeeds in adding a new block of transactions to the blockchain is rewarded with a predetermined set of newly issued Bitcoin. Other cryptocurrencies relevant to the scheme, including Dash and Litecoin, can be similarly mined.

7. At all times relevant to this Indictment, Digital Skynet Limited ("Skynet") was a Hong Kong-based company formed in or about July 2017 that entered into cryptocurrency mining-related agreements on behalf of Ormeus Global and Ormeus Coin. JOHN ALBERT LOAR BARKSDALE, the defendant, was the chief executive officer ("CEO") of Skynet and CC-1 was an authorized signatory for Skynet.

<strong>THE FRAUDULENT SCHEME</strong>

<strong>Materially False and Misleading Statements that Ormeus Coin Was Backed By a $250 Million Cryptocurrency Mining Operation</strong>

8. Beginning at least in or about November 2017, JOHN ALBERT LOAR BARKSDALE, the defendant, began speaking publicly about Ormeus's purported $250 million cryptocurrency mining operation. For example, in a webinar on or about November 7, 2017, BARKSDALE claimed that Ormeus had a contract that would result in the delivery of over $250 million worth of miners over the next 36 months and would be signing the contract in the next several weeks. Subsequently, on or about November 17, 2017, BARKSDALE, as the CEO of Skynet, entered into an agreement with

6

other individuals pursuant to which Ormeus Global agreed to pay
a total of $250 million in Bitcoin to Skynet, which would be
used to purchase mining equipment from a third party (the
"Mining Supplier").  In or about December 2017, BARKSDALE
directed the transfer of approximately $10 million in Bitcoin
for the purchase of mining equipment for Ormeus to the Mining
Supplier, but no mining equipment procured with that payment was
put into operation until at least in or about March 2018.

     9.   Despite knowing that no mining equipment pursuant to
the agreement with the Mining Supplier had actually been
procured or put into operation, JOHN ALBERT LOAR BARKSDALE, the
defendant, and CC-1 reviewed and approved the release of a
"White Paper" on or about February 8, 2018, titled "Ormeus Coin:
The Tokenization of Industrial Cryptocurrency Mining" (the
"White Paper"), which was posted to Ormeus Coin's website.  The
White Paper stated that Ormeus Coin is a "ground-breaking
digital money system secured by one of the biggest industrial
cryptocurrency mining operations in the world" and
"cryptographically linked to a publicly identifiable currency
vault [the ORV] funded by a USD $250 million North American
mining business powered by green energy."  The White Paper
claimed that "Ormeus Coin has already commenced its
cryptocurrency mining operation through private investment and

is not seeking public money through an ICO [Initial Coin

Offering]." The White Paper also stated that Ormeus would use

40% of the mining revenue to acquire additional mining

equipment, that another 40% of the mining revenue would be

deposited and stored in the ORV and publicly displayed, that 10%

of mining revenue would be used to buy back Ormeus Coin in order

to maintain a stable value, and that the remaining 10% percent

of mining revenue would be used for back-end software

development.

    10.  The White Paper included the following photograph

labeled "Actual Photo of Ormeus Coin Mining Facility," which

appeared to depict a vast facility containing rows of

cryptocurrency mining equipment belonging to Ormeus Coin:



In reality, the facility depicted was an actual data center

containing cryptocurrency mining equipment located in Montana,

but it was entirely owned and operated by a third party (the "Third-Party Mining Facility").  At the time this photograph was used to create the false appearance that Ormeus owned and operated a large mining facility, the Third-Party Mining Facility hosted at most no more than two rows of miners for Ormeus.  This same photograph was used multiple times in marketing materials throughout early 2018 to create the false impression that it was a photo of an Ormeus mining facility. For example, in a Facebook post by Ormeus Global on or about January 22, 2018, the same photograph of the Third-Party Mining Facility was used in a post to announce a contest to "WIN a trip to tour the Ormeus Mining facility and more!"

11.  After the release of the White Paper on or about February 8, 2018, marketing materials approved by JOHN ALBERT LOAR BARKSDALE, the defendant, continued to represent that Ormeus Coin was backed by a $250 million cryptocurrency mining operation through at least in or about April 2018.  For example, on or about February 9, 2018, Ormeus Coin ran an advertisement on a jumbotron in Times Square in Manhattan, New York, which proclaimed, in a caption above a giant ORME symbol, "$250 Million Cryptocurrency Mining Farm Revealed in Legal Audit by Ormeus Coin."  On or about February 12, 2018, a photograph of the Times Square advertisement was posted to Ormeus Global's

9

Twitter account with the caption "Live from New York City,
Ormeus Coin Advertising its $250 million Cryptocurrency Mining
Farm in Times Square, Manhattan!"  Further, in a press release
dated on or about April 12, 2018, Ormeus Coin claimed that its
"highly-rated digital currency is secured by a reserve vault
that is anchored to the company's USD$250 Million crypto mining
operations."

12.  In truth, Ormeus Coin's cryptocurrency mining
operations never approached a value close to $250 million.  The
false statements about Ormeus Coin's purported $250 million
cryptocurrency mining operation approved by and caused to be
disseminated by JOHN ALBERT LOAR BARKSDALE, the defendant,
helped to generate interest in and sell Ormeus Global's
enrollment packages and Ormeus Coin.

**Materially False and Misleading Statements that the Ormeus
Reserve Vault Reflected Actual Mining Revenue**

13.  The White Paper released in or about February 2018
that was approved by JOHN ALBERT LOAR BARKSDALE, the defendant,
and CC-1 claimed that revenue from Ormeus's mining operations
would be stored in the ORV and publicly verifiable through proof
of asset technology and self-executing smart contracts.  As
explained in the White Paper, the purpose of the ORV was to
ensure "that Ormeus Coin stays linked to the real-world assets,

10

transparent for all to see, without susceptibility to fraud, hacking, or tampering."  A link to the ORV website was posted to Ormeus Coin's website.  On a tab on the ORV website labeled "Bitcoin Mining," the ORV website represented that a majority of the current ORV was backed by Bitcoin.

14.  Beginning in at least September 2018, JOHN ALBERT LOAR BARKSDALE, the defendant, and CC-1 began privately negotiating with an individual with significant Bitcoin holdings ("Individual-1") to display Individual-1's Bitcoin holdings on the ORV website so that it would be appear that those assets belonged to and were securing Ormeus Coin.  Prior to the completion of those negotiations, on or about November 15, 2018, BARKSDALE caused Ormeus Coin's Facebook account to post the following message:  "It has been confirmed that 40% of profits from ongoing production at the mining centers are now permanently linked to a 'gold-standard' Ormeus Reserve Vault (ORV) which supports the stability of the coin.  An unalterable smart contract system currently verifies regular deposits from the mining, which is cryptographically linked to the publicly identifiable currency vault."

15.  The negotiations with Individual-1 culminated in an agreement on or about January 30, 2019, executed by CC-1 on behalf of Skynet, Individual-1, and an executive of Ormeus

11

Global, pursuant to which, among other things, Individual-1 authorized Skynet to display Individual-1's Bitcoin wallet in the ORV.  Thereafter, from at least in or about January 2019 through at least in or about October 2021, the ORV website displayed that the ORV consistently contained approximately 3,081 Bitcoin in purported mining revenue, which was valued at between approximately $10 million and $188 million, depending on the value of Bitcoin during the period.  Contrary to the marketing materials set forth above, the Bitcoin assets in the ORV were owned and controlled by Individual-1, and were not generated by Ormeus's mining operations and did not belong to Ormeus, JOHN ALBERT LOAR BARKSDALE, the defendant, or CC-1. Those Bitcoin assets therefore did not secure the value of Ormeus Coin.

        16.  Despite knowing that the Bitcoin assets depicted in the ORV actually belonged to Individual-1, JOHN ALBERT LOAR BARKSDALE, the defendant, continued to falsely represent through in or about 2019 that those Bitcoin assets consisted of mining revenue generated by Ormeus.  For example, during an "Ask Me Anything" Facebook Live session with BARKSDALE that was posted to Ormeus's YouTube channel on or about July 10, 2019, BARKSDALE walked potential investors through the ORV website and falsely claimed that the approximately 3,081 Bitcoin shown on the

website were "the BTC that we've mined.  Obviously, it's a

phenomenal amount of BTC."  The ORV website continued to falsely

represent that the ORV contained approximately 3,081 Bitcoin

from mining through at least in or about October 2021.

**Materially False and Misleading Statements that Ormeus's Mining
Operations Generated Over $5 Million in Monthly Revenue**

17.  Beginning in or about February 2018, JOHN ALBERT LOAR

BARKSDALE, the defendant, caused Ormeus Coin to issue false

public statements claiming that its mining operations were

generating over $5 million in current monthly revenue.  For

example, the White Paper issued in or about February 2018

claimed that Ormeus Coin's "CURRENT AUDITED MINING REVENUE

(SPRING 2018)" consisted of $3.4 million in monthly revenue from

Bitcoin mining, $1.6 million in monthly revenue from Litecoin

mining, and $350,000 in monthly revenue from Dash mining, for a

total monthly revenue of $5.4 million.  Then, on or about March

3, 2018, BARKSDALE used his personal Facebook account to post a

link to an article which stated that a "recent independent legal

and financial audit published by a leading attorney at law

revealed Ormeus Coin is currently making $5.4 million per month

from mining, which will increase to $6.7 million in the next two

months."  Finally, on or about March 26, 2018, Ormeus Coin

issued a press release that claimed it had "significant North

13

American data centers in the Midwest and upstate New York already making almost USD$7 Million per month." Contrary to these public claims, Ormeus's mining operations did not produce revenues exceeding one million dollars in any month.

### Statutory Allegations

18. From in or about 2017 through at least in or about October 2021, in the Southern District of New York and elsewhere, JOHN ALBERT LOAR BARKSDALE, the defendant, and others known and unknown, willfully, and knowingly combined, conspired, confederated and agreed together and with each other to commit offenses against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

19. It was a part and object of the conspiracy that JOHN ALBERT LOAR BARKSDALE, the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section

14

240.10b-5, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

Overt Acts

20.   In furtherance of the conspiracy and to effect the illegal objects thereof, JOHN ALBERT LOAR BARKSDALE, the defendant, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   On or about February 8, 2018, BARKSDALE reviewed and approved the release of the White Paper that falsely represented that Ormeus Coin's "current audited mining revenue" was $5.4 million.

b.   On or about February 12, 2018, BARKSDALE authorized an advertisement on a jumbotron in Times Square in Manhattan, New York, which falsely represented that Ormeus Coin had a $250 million cryptocurrency mining farm.

15

c.   On or about July 10, 2019, BARKSDALE falsely claimed that Ormeus had generated approximately 3,081 Bitcoin from mining as displayed on the ORV website.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Securities Fraud)

The Grand Jury further charges:

21.  The allegations set forth in paragraphs 1 through 17 are realleged and incorporated by reference as if fully set forth herein.

22.  From in or about 2017 through at least in or about October 2021, in the Southern District of New York and elsewhere, JOHN ALBERT LOAR BARKSDALE, the defendant, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, in connection with the purchase and sale of securities, used and employed manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which

16

they were made, not misleading; and (c) engaging in acts,

practices and courses of business which operated and would

operate as a fraud and deceit upon persons, to wit, BARKSDALE

solicited investments in Ormeus Global enrollment packages and

Ormeus Coin through materially false and misleading statements

and omissions regarding the size and value of Ormeus's

cryptocurrency mining operations and the revenue generated by

those operations.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17,
  Code of Federal Regulations, Section 240.10b-5; and Title 18,
                United States Code, Section 2.)

### COUNT THREE
**(Conspiracy to Commit Wire Fraud)**

The Grand Jury further charges:

23.  The allegations set forth in paragraphs 1 through 17

are realleged and incorporated by reference as if fully set

forth herein.

24.  From in or about 2017 through at least in or about

October 2021, in the Southern District of New York and

elsewhere, JOHN ALBERT LOAR BARKSDALE, the defendant, and others

known and unknown, willfully and knowingly, did combine,

conspire, confederate, and agree together and with each other to

commit wire fraud, in violation of Title 18, United States Code,

Section 1343.

17

25.   It was a part and an object of the conspiracy that JOHN ALBERT LOAR BARKSDALE, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, BARKSDALE and others engaged in a scheme to solicit investments in Ormeus Global enrollment packages and Ormeus Coin through materially false and misleading statements and omissions regarding the size and value of Ormeus's cryptocurrency mining operations and the revenue generated by those operations, and used and caused the use of interstate wire communications in furtherance of those acts.

(Title 18, United States Code, Section 1349.)

## COUNT FOUR
### (Wire Fraud)

The Grand Jury further charges:

26.   The allegations set forth in paragraphs 1 through 17 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

18

27.  From in or about 2017 through at least in or about October 2021, in the Southern District of New York and elsewhere, JOHN ALBERT LOAR BARKSDALE, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce writings, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice, to wit, BARKSDALE solicited investments in Ormeus Global enrollment packages and Ormeus Coin through materially false and misleading statements and omissions regarding the size and value of Ormeus's cryptocurrency mining operations and the revenue generated by those operations, and used and caused the use of interstate wire communications in furtherance of those acts.

(Title 18, United States Code, Sections 1343 and 2.)

**FORFEITURE ALLEGATION**

28.  As a result of committing one or more of the offenses alleged in Counts One through Four of this Indictment, JOHN ALBERT LOAR BARKSDALE, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c),

19

any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

## Substitute Assets Provision

29.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code,

20

Section 2461(c), to seek forfeiture of any other property of the

defendant up to the value of the above forfeitable property.

          (Title 18, United States Code, Section 981,
       Title 21, United States Code, Section 853, and
       Title 28, United States Code, Section 2461.)

FOREPERSON              Nov. 9 2021

Damian Williams

DAMIAN WILLIAMS
United States Attorney

21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JOHN ALBERT LOAR BARKSDALE,

Defendant.

## SEALED INDICTMENT

21 Cr. ____

(Title 15, United States Code, Sections
78j(b) and 78ff; Title 17, Code of
Federal Regulations, Section 240.10b-5;
and Title 18, United States Code,
Sections 371, 1343, 1349, and 2.)

DAMIAN WILLIAMS
United States Attorney.

**A TRUE BILL**

Foreperson.

11/9/21 Filed indictment
under seal,
arrest warrant
issued.
K. N Fox
US MJ